RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0344p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-1488

JAMES TERRELL LATTNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-80640—John Corbett O'Meara, District Judge.

Argued: June 15, 2004

Decided and Filed: October 5, 2004

Before: SILER and ROGERS, Circuit Judges; FORESTER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Paul J. Stablein, STABLEIN, FLOOD & LANCTOT, Royal Oak, Michigan, for Appellant. Michael R. Mueller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Paul J. Stablein, STABLEIN, FLOOD & LANCTOT, Royal Oak, Michigan, for Appellant. Michael R. Mueller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

FORESTER, Chief District Judge. The Defendant-Appellant James Terrell Lattner ("Lattner") herein appeals his conviction on one count of Possession with Intent to Distribute Cocaine Base, alleging various trial errors. Lattner has been sentenced to a term of imprisonment of 170 months in connection with this crime. We **AFFIRM.**

## BACKGROUND

On July 18, 2001, a state search warrant was executed at 2416 Monterey in Detroit, Michigan by five (5) Detroit police officers. Large quantities of what proved to be heroin, cocaine, and crack cocaine, as well

---

[*] The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

as narcotics paraphernalia for cutting, packaging, and distribution, were found in the house. Notable among the seized paraphernalia were several ink pads used for labeling drug packets, including one reading "World Domination." Lattner was present at 2416 Monterey when the search warrant was executed, keys taken from his pocket during the search fit the front door, and the home was later found to be titled in the name of his mother.[1] Lattner's fingerprint was also found on one of the plastic bags containing narcotics.

Subsequently, Lattner was charged by way of superseding indictment with three counts relating to the evidence seized from 2416 Monterey. These include: Count I: Possession with Intent to Distribute Heroin; Count II: Possession with Intent to Distribute Cocaine Base; and Count III: Possession with Intent to Distribute Cocaine.

Prior to the jury trial of this matter, Lattner filed a motion to suppress the evidence seized pursuant to the search warrant executed at 2416 Monterey and for an evidentiary hearing to challenge the factual allegations contained in the supporting affidavit. Over two (2) days of testimony, eight (8) witnesses were called to testify, including four (4) Detroit Police Officers. Following the evidentiary hearing, the district court denied Lattner's motion to suppress and ruled that the affidavit in support of said warrant was adequate on its face.

Prior to trial, Lattner also moved to suppress the government's proposed FRE 404(b) evidence. The motion was denied, and the government introduced evidence at trial concerning several prior acts, including: 1) testimony from two police officers who arrested Lattner in October of 1999 after observing him conducting drug transactions and heroin packets seized during that arrest, which were stamped "World Domanation;"[2] 2) testimony from a police officer who, in August of 1999, assisted other officers in the seizure of heroin from Tremayne Nowden pursuant to a search warrant executed at 4155 Wesson Street in the City of Detroit; 3) portions of an earlier hearing transcript that were read into the record to establish that Lattner had admitted ownership of the property at 4155 Wesson; and 4) testimony from an officer who seized 89 packets of heroin from 4155 Wesson in September of 1999, when Thomas Latham was arrested for the possession of said packets, which were also stamped "World Domination." The district court gave both an interlocutory and final limiting instruction on the use of Rule 404(b) evidence.

Lattner was found guilty of one count in the superseding indictment - Count II, Possession with Intent to Distribute Cocaine Base. He was subsequently sentenced to a term of imprisonment of 170 months. Lattner moved for a new trial based on several alleged trial errors, including: 1) comments from the district court judge surrounding Lattner's testimony on his own behalf and the revelation of the fact that he had been previously convicted of two prior drug offenses; 2) instances where jurors observed Lattner in handcuffs and being escorted by court marshals while getting on or off the elevator; 3) interruptions of defense counsel's cross-examination of various witnesses by the district court judge; and 4) statements made by the attorney for the United States in closing argument. Lattner's motion for a new trial was denied.

---

[1] The parties present varied versions of the circumstances surrounding the execution of this search warrant. The Appellant asserts that Lattner was present at 2416 Monterey at the time of the search because his car broke down and, upon re-starting the vehicle, Lattner traveled to what he identifies as his friend's house (2416 Monterey) to make a call for assistance. Lattner's bad day got worse when, as he was talking to his aunt on his cell phone, police officers from the Detroit Police Department broke in the front door of the residence and, with guns drawn, ordered Lattner and the other two occupants of the building to get on the ground. Appellant contends that, as he was on the ground, he heard the officers entering other parts of the house, including an allegedly padlocked northwest bedroom where drugs were eventually found.

The Appellee, on the other hand, indicates that upon execution of the search warrant herein at issue, Lattner was found in the aforementioned northwest bedroom, sitting on the bed and surrounded by numerous zip-lock bags of what proved to be heroin.

[2] This lettering, "World Dom*a*nation," should be contrasted with that found on the ink pads confiscated from 2416 Monterey, which read "World Dom*i*nation."

Lattner appeals his conviction, arguing that the drugs and other evidence of narcotics trafficking activities found during the execution of the search warrant at 2416 Monterey should have been excluded at his trial because the affidavit upon which said warrant was based failed to establish probable cause to believe evidence of a crime would be found at the stated place. Lattner asserts that his Fourth Amendment right to be free from unreasonable searches and seizures was violated when the district court denied his motion to suppress evidence on these grounds. Lattner further contends that the trial court erred in denying his pre-trial motion to suppress evidence of other acts outside those charged. Finally, Lattner claims that the trial court erred in denying his motion for a new trial based on the individual and cumulative effect of alleged trial errors that Lattner believes resulted in a denial of his right to a fair trial under the Sixth Amendment.

## DISCUSSION

### A.    Motion to Suppress

Lattner argues that the search warrant for 2416 Monterey is defective because the affidavit on which it is based is insufficient. To be sufficient, the affidavit must establish probable cause to believe that evidence of narcotics trafficking would be present at 2416 Monterey on July 18, 2001. *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990), and is said to exist "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Davidson,* 936 F.2d at 859; *see also, e.g., United States v. Johnson,* 351 F.3d 254, 258 (6th Cir.2003). In reviewing the sufficiency of a search warrant affidavit, the "magistrate's determination of probable cause is afforded great deference," and should only be reversed if arbitrarily made. *United States v. Greene,* 250 F.3d 471, 478 (6th Cir.2001); *United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993). To this end, "review of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Greene,* 250 F.3d at 479. The district court's denial of Lattner's motion to suppress is reviewed by this Court for clear error with respect to that court's findings of fact and *de novo* with respect to conclusions of law. *United States v. Miggins,* 302 F.3d 384, 397 (6th Cir.2002) (citing *United States v. Bradshaw,* 102 F.3d 204, 209 (6th Cir.1996)).

The affidavit in this case was given by one of the investigating officers. After recounting the averring officer's professional history, the affidavit summarizes the factual basis for the warrant request as follows:

> On July 16, 2001, the affiant received a complaint that the location of 2416 Monterey was involved in narcotic trafficking.

> On July 16, 2001, the affiant went to the location of 2416 Monterey and conducted a fixed surveillance for 30 minutes. During this surveillance 3 persons arrived at this location, entering the front door and staying a few minutes and returned with small items in their hands (concealed manner). The affiant was afforded the opportunity to speak with one of the buyers B/M/40's wearing blue jeans and a yellow shirt, affiant asked buyer "If Marty was opened for business" and buyer replied "yes" and open[ed his] hand showing affiant one z/l of suspected cocaine.

> On July 17, 2001 the affiant was working in conjunction with an SOI. On this date the affiant met with the SOI to formulate plan to make a controlled purchase from the location of 2416 Monterey. The SOI was searched for money and narcotics with negative results. The affiant issued secret service funds and instructed the SOI to attempt a purchase of narcotics from the location of 2416 Monterey. The affiant observed the SOI go directly to the front door of the location, enter same and stay for a short period of time, then to return

directly back to the affiant. The SOI returned and stated that the above seller told him (SOI) to come back later because he (seller) was out of cocaine. This Source of Information has been utilized on 6 occasions, resulting in the arrest of over 4 persons, for the violation of the controlled substance act and other related offenses, with at least 3 convictions and cases still pending in the Wayne County Circuit Court and the 36th District Court. Independent investigation has proven that the SOI's information is both credible and reliable.

On July 18, 2001, the affiant went back to the above location to assure that narcotics activity was still in progress. The affiant set up surveillance for a time period of 30 minutes and observed 2 persons go to the front door of the above location, enter same for a period of time of less than 45 seconds and the[n] leave the location same manner as above.

J.A. p. 40.

The affidavit thus contains several different kinds of information in the form of anonymous assertions, direct observations, corroboration of assertions, and valid inferences from circumstances. *Id.* Through independent surveillance of 2416 Monterey, the affiant witnessed several people visiting the residence, staying a few minutes, and then leaving with small packages. This activity, consistent with the affiant's training and experience, supported the anonymous complaint of narcotics trafficking at that location. The anonymous complaint was further confirmed by the affiant's interview of an identified "buyer," who, when asked if "Marty was opened for business,"[3] stated that he was and revealed in his hand one zip-lock bag of suspected cocaine. Based on these direct observations, the affiant utilized a reliable informant to attempt a controlled purchase from 2416 Monterey on July 17, 2001. The source entered the residence, stayed for a short time, and was informed by the seller that the seller was currently out of cocaine, but to "come back later." A reasonable inference can be made from the statement "come back later" that cocaine would again be available in said location within a short period of time. To confirm this inference, the affiant returned to 2416 Monterey on July 18th, prior to obtaining a search warrant for the premises. The affiant again observed conduct that, consistent with his training, led him to believe narcotics trafficking was taking place at 2416 Monterey.

The Magistrate, based on the balance of the information contained in the supporting affidavit as set forth above, was clearly within his authority to issue the search warrant for 2416 Monterey - there was a "'fair probability,' given the totality of the circumstances," that contraband or evidence of narcotics trafficking would be found at that location. *United States v. Johnson,* 351 F.3d at 258. The government's evidence seized during the execution of the search warrant included heroin, crack cocaine, cocaine, marijuana, cash, and drug distribution paraphernalia and packaging - all evidence of narcotics trafficking - and this evidence was properly introduced at trial.

In an attempt to discredit the district court's conclusion that this affidavit was sufficient to support a search warrant, Lattner herein raises a series of meritless objections. Lattner complains that the affiant's independent surveillance of 2416 Monterey, including his observation of people coming and going from 2416 in a manner indicative of narcotics trafficking and subsequent conversation with one of the buyers, was stale because it took place two (2) days prior to securing the search warrant. Lattner further argues that the affidavit does not contain any evidence to support the affiant's conclusion that the substance in the zip-lock bag showed to him by the "buyer" was cocaine and that the description of the substance was insufficient.

The affiant's independent investigation prior to obtaining the search warrant for 2416 Monterey spanned three days. The affiant conducted surveillance in the manner described above on the first day, an attempted controlled purchase by an informant on the second, and further surveillance on the third. The

___
[3] "Marty" was the name given police by the initial anonymous complainant as the person responsible for the ongoing drug trafficking at 2416 Monterey. J.A. p. 117.

investigation continued up to the hour before the affidavit was made and search warrant obtained, and the information could hardly have been more up-to-the-minute. As for the affiant's description of his encounter with one of the buyers, Lattner focuses on information that is not present, rather than on information that is present. The affiant does indicate that he saw the buyer leaving 2416 Monterey. He describes what the buyer was wearing. The affiant further recounts the conversation between him and the buyer: the affiant asked the buyer whether "Marty was opened for business." In response, the buyer said "yes," and opened his hand to reveal what the affiant referred to as a "one zl [zip-lock bag] of suspected cocaine." Based on the affiant's experience with narcotics investigations and the countless times he has observed cocaine, the affiant's description of what was observed during the independent surveillance of 2416 Monterey is clearly sufficient to establish probable cause that drugs were being sold from that location.

Lattner further contends that any prior evidence of narcotics trafficking at 2416 Monterey was negated when the informant was not able to make a controlled purchase, being told instead to return later because the seller was out of cocaine. Lattner argues that this failed controlled purchase indicated that drugs were no longer present at the location. However, as the United States points out:

> [T]he seller did not say, "Don't come back." He said "Come back." This means that while he was presently out of cocaine, he would have cocaine later. Further, the seller did not say to come back two days from now, a week from now, or a month from now. He said to come back "later." "Later" is reasonably interpreted as later the same day or the next day.

The indication that drugs would be available "later" was confirmed with additional surveillance of the property the next day - immediately prior to securing the search warrant.

Lattner relies on *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir.1996), to support his argument that the search warrant is based only upon the conclusory suspicions of the affiant and, thus, is not sufficient to establish probable cause. *Weaver,* however, can be easily distinguished on its facts. Therein, the affidavit found to be lacking in probable cause was described as follows:

> [r]eading this affidavit in a "practical, common-sense" manner, the only claim of possible wrongdoing is the averment that, within three days prior to the affidavit date, the informant was on the suspect premises and, while there, he saw some quantity of marijuana "expressly for the purpose of unlawful distribution." [The affiant] presents no underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own "belief" that these quantities of marijuana were present "for the purpose or with the intention of unlawful possession, sale or transportation," or even that marijuana would be on the premises when the warrant was executed. . . . From this affidavit, all other information that the government cites as particularized facts, that is, the suspect's name, address, and description of the residence, could arguably be obtained by any person passing the [site of the search]. As presented, the combined boilerplate language and minimal handwritten information provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed regarding criminal activity.

*Weaver*, 99 F.3d at 1378-79. Additionally, this court has held that "*Weaver's* holding is that the uncorroborated search warrant was defective is limited to the facts of that case." *United States v. Allen*, 211 F.3d 970, 974 (6th Cir.2000) (*en banc*).

The affidavit at issue here is clearly based on more than hearsay information from a confidential informant and bare conclusions made by the affiant. In *Weaver,* the affiant was given a tip by a confidential informant that was never verified. *Id.* at 1379-80. Here, the affiant verified the initial anonymous complaint of narcotics trafficking through a three-day independent investigation combining surveillance and an attempt at a controlled purchase by an informant. The affiant further made contact with one of the people seen

leaving the premises and confirmed that the person was in possession of suspected contraband that had been purchased from the person accused by the anonymous complainant of selling drugs at 2416 Monterey. Based on the anonymous complaint, a statement from a person seen leaving the premises, and the affiant's direct observations and training and experience, it was sufficiently probable that evidence of narcotics trafficking would be found at 2416 Monterey.

## B.      Rule 404(b) Evidence

Prior to trial, Lattner moved to prevent the United States from introducing certain FRE 404(b) evidence, including: 1) testimony regarding heroin packets stamped "World Domanation" that were seized from Lattner during an October 1999 arrest (the "Junction Evidence"); and  2) testimony regarding three separate incidents during which drug packets stamped "World Domination" were seized from 4155 Wesson Street in Detroit, a residence later established as belonging to Lattner (the "Wesson Evidence").  The United States asserted that the evidence was being offered to show a plan or consistent operation and to show identity, in response to Lattner's defenses of lack of knowledge, mere presence, and accidental presence:

> [b]ecause the name "World Domination" was found on drugs at Wesson and at Junction, as well as on the stamp pad in the instant case and [because] defendant was connected by his testimony to the Wesson dwelling and by his presence with the drugs at the Junction address, it is more likely that he was connected to the drugs in the instant case.

J.A. p. 81.  The district court, based on the foregoing proffer, denied Lattner's motion, finding that there was a substantial basis for believing that the prior acts took place, that they were probative of a proper purpose, and that the probative value outweighed the prejudicial effect.

The district court's Rule 404(b) inquiry must consist of three parts. First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b).  Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative. *United States v. Mack,* 258 F.3d 548, 553 (6th Cir. 2001). As noted above, the district court, based on the foregoing proffer, denied Lattner's motion to prevent the United States from introducing the "other acts" evidence in question, finding that there was a substantial basis for believing the prior acts occurred, that they were probative of a proper purpose, and that the probative value outweighed the prejudicial effect.  This Court reviews the district court's determination of the admissibility of 404(b) evidence for abuse of discretion. *Mack*, at 553.

Lattner argues that the trial court erred because it did not make a factual determination that Lattner had committed the alleged misconduct, that the FRE 404(b) evidence was not for a proper purpose under the rule, and that the evidence was more prejudicial than probative.  "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *See Huddleston v. United States,* 485 U.S. 681, 689 (1988); *see also Dowling v. United States,* 493 U.S. 342, 348-49 (1990) (noting that the court need not conclude that the defendant committed the other act beyond a reasonable doubt to admit the testimony, the standard is whether a jury could reasonably conclude that the act was committed and that the defendant committed the act).  Following Lattner's motions to exclude the proposed FRE 404(b) evidence in this case, J.A. pp. 59-64 & 66-68, the district court took briefs on the issue, J.A. pp.78-89 & 69-74, and heard protracted oral arguments, J.A. pp. 192-207.  After the first set of arguments on this issue, the district court issued a ruling denying without prejudice the motion with respect to the Junction and Wesson Evidence. J.A. p. 206.  The Court indicated that the matter could be re-visited at trial and, indeed, heard further argument on the issue prior to the introduction of said

evidence. J.A. pp. 449-456.[4] The district court, by denying Lattner's motion to suppress after such lengthy exposition of the issues, ruled that there was a substantial probability that the other acts had occurred. There is certainly no abuse of discretion in this determination.

When considering whether the Junction and Wesson Evidence were introduced for a proper purpose under Rule 404(b), it must be remembered that Rule 404(b) is an inclusionary, rather than exclusionary, rule. S*ee, e.g., United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985). *See also, e.g, United States v. Myers*, 102 F.3d 227 (6th Cir.1996); *United States v. Bakke*, 942 F.2d 977, 981 (6th Cir.1991); *United States v. Vance*, 871 F.2d 572, 575 (6th Cir.1989), *cert. denied*, 493 U.S. 933 (1989)*.* Specifically, the Rule provides that "evidence of other crimes, wrongs or acts" may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FRE 404(b). While the law is clear that evidence of past criminal activity is inadmissible to show criminal propensity, *United States v. Ismail,* 756 F.2d 1253, 1258-1259 (6th Cir.1985), "Rules 401 and 402 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable - is admissible unless the Rules provide otherwise." *Huddleston v. United States,* 485 U.S. at 686. *See United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991) ("To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, 'whether the evidence is probative of a material issue other than character.'"(quoting *Huddleston,* 485 U.S. at 686)).

The government's proffer of the 404(b) evidence argued that the evidence was necessary to prove Lattner's specific intent to distribute, his guilty knowledge of the crime, his plan or consistent method of operation, and identity, as well as to rebut Lattner's possible defenses of lack of knowledge, general and specific intent, mere presence, accidental presence, or mistaken identity. This Court has held that when a defendant is charged with a specific intent crime, such as possession with intent to distribute, 404(b) evidence is admissible to prove intent, subject to the probative/prejudicial balancing. *United States v. Johnson,* 27 F.3d 1186, 1192-93 (6th Cir.1994). Lattner argues that the 404(b) evidence should not have been admitted for this purpose because he did not raise any issue of intent at trial. However, it seems logical that when Lattner pled not guilty to the offense of possession with intent to distribute, he put his general intent and specific intent at issue, thereby giving the government the burden to establish both beyond a reasonable doubt. This Court has held that Rule 404(b) evidence of prior involvement in uncharged drug offenses is indeed relevant and admissible on the issue of intent. *See United States v. Clemis,* 11 F.3d 597, 600 (6th Cir.1993), *cert. denied,* 511 U.S. 1094 (1994).

Furthermore, claims of innocent presence or association, such as that made by Lattner's defense, routinely open the door to 404(b) evidence of other drug acts. For instance, in *United States v. Ismail*, 756 F.2d 1253, the defendant was convicted of conspiring to import and distribute heroin based, in part, on evidence that his name, telephone number, address, and a statement of account were found in the address book of a known drug dealer. *Id.* at 1254-56. The defendant attempted to claim innocent association - that

---

[4]Lattner accuses the district court of not utilizing discretion with respect to its ruling regarding the 404(b) evidence at issue, pointing to statements made by the district court during the **second** round of oral arguments on this motion. The district court, in urging the counsel for the United States to think about the potential draw-backs of introducing the FRE 404(b) evidence, stated: "THE COURT: And just let me say that - While I'm talking or [defense counsel's ] talking, I'm inviting you, [counsel for the United States], to think about - I take it if a conviction results, this might be the basis for something going on in Cincinnati, and whether you want it or not." J.A. p. 453. Lattner misconstrues these comments.

A review of the record indicates that how the ruling on this issue might hold up on appeal was only one of many factors considered by the district court in making its ruling with respect to this Rule 404(b) evidence. The statement certainly does not demonstrate that the court failed to exercise discretion with respect to its ruling. The Court indeed explained its ruling in this manner: "THE COURT: . . . I am denying it [defense's motion to suppress the Junction and Wesson 404(b) Evidence] without prejudice. I think it's possible that - - I guess [that based on] the background of the evidence as it comes in at trial, that that can be raised again and maybe successfully. It seems to me that it is the various elements of what will be offered into evidence [that] is certainly probative, and then the question becomes is it somewhat unfairly prejudicial, and that kind of balancing I think had better be done with a fuller set of facts and testimony and evidence before the court as we would have at trial." J.A. p. 206. The district court's ruling shows a balancing of the relevant factors and a definite utilization of discretion.

his ties to the drug dealer arose only out of his legitimate business ventures wherein he traveled to the United States in order to make bulk sales of precious stones. *Id.* at 1257. Another panel of this Court upheld the district court's decision to allow testimony regarding two prior uncharged hashish and cocaine transactions as evidence of prior bad acts under FRE 404(b). *Id.* at 1258-59. This Court held that the evidence of prior drug transactions could be introduced to prove a scheme or plan to traffic hashish and that proving said scheme was probative with respect to evaluating defendant's defense of innocent association. *Id.* at 1259-60. *See also United States v. Bennett,* 848 F.2d 1134 (11th Cir.1988) (holding that evidence of a prior conviction and evidence of a five-year-old scheme to import cocaine admissible to establish intent given defendant's innocent explanation that the reason he pulled up to the drug laden vessel was his concern for the safety of anyone that might be aboard). The "explanation" set forth by Lattner with respect to his presence at 2416 Monterey at the time the search warrant was executed - that he only stopped by the residence because his vehicle had broken down and the residence was nearby - is similar to the "explanation" employed by the defendant in *Ismail.* The fact that Lattner had been involved in other drug transactions involving contraband stamped "World Domanation" connects him to the drug transactions taking place at this residence, where a stamp labeled "World Domination" was also found, and thus diminishes the likelihood that a jury would believe his innocent "explanation" for being present at the residence.

Perhaps most persuasive is the government's proffer based on the similarity between the defendant's instant offense and the other acts. This renders proof of the prior acts admissible under FRE 404(b) to show plan and method of operation. Lattner used a "brand name" on his heroin in both 1999 and 2001. "World Domanation" was stamped on heroin packets at Wesson and Junction and an ink pad with "World Domination" on the stamp was found in the instant 2001 search warrant execution. *See United States v. Rivera,* 971 F.2d 876 (2d Cir.1992) (affirming that evidence of brand logo on seized heroin contributed to the sufficiency of the evidence).

The 404(b) evidence herein at issue is probative on a wide array of relevant issues, and no facts exist to show why this evidence should be seen as more prejudicial than the evidence at issue in numerous other cases wherein this Court has upheld the admissibility of prior drug conduct. *See, e.g., Ismail*, 756 F.2d at 1258. Although, as with all admitted evidence of prior bad acts, this Court may assume that some prejudice potentially inhered in the testimony concerning prior drug transactions, the district court gave a strong cautionary instruction about the limited permissible use of the other acts evidence during the general jury instructions. J.A. pp. 1338-1339.[5] In so doing, "the district court helped to insure that the appellant would not be prejudiced by the introduction of [evidence of prior drug transactions]." *Ismail*, 756 F.2d at 1258. *See also United States v. Ring,* 513 F.2d 1001, 1004 (6th Cir.1975). Thus, the other acts evidence was admissible for a proper purpose and the district court did not abuse its discretion in balancing its probative value against the potential prejudicial impact.

---

[5]The Court's limiting instruction was read as follows:

You have heard testimony that the defendant allegedly committed or was involved in some act similar to the crimes charged in the Indictment but at different times and places. I'm referring to the incident in front of 5186 Junction Street on October 28, 1999; the two arrests of Tremayne Nowden in or near 4155 Wesson Street on October 27th and September 12, 1999; and the arrest of Thomas Latham at 4155 Wesson on September 15, 1999.

You cannot consider this as evidence of the defendant's character to- - to be acting in conformity with that character. Instead, I instruct you that evidence was admitted only for the limited purpose to be considered by you on the questions of the defendant's identity as one who possessed the controlled substances, his alleged intent to commit the crimes, and to deliver the controlled substances, his alleged plan in committing the offenses, and/or the preparation to deliver the controlled substances that he is now on trial for and for no other purpose.

J.A. pp. 1338-1339.

## C. Appellant's Motion for New Trial

Following the jury verdict in this case, Lattner moved for a new trial based on the individual and cumulative effect of multiple alleged trial errors which Lattner argues resulted in a denial of his right to a fair trial under the Fifth Amendment. The district court's denial of a motion for new trial is reviewed under an abuse of discretion standard. *United States v. Gaitan-Acevedo,* 148 F.3d 577, 589 (6th Cir.1998).

The claimed errors include: 1) a statement by the district court judge in front of the jury intimating that a portion of the Lattner's testimony was untrue; 2) an encounter in which several jurors saw Lattner in handcuffs and being escorted onto an elevator by U.S. Marshals during the pendency of the trial; 3) excessive interference by the district court judge in the presentation of Lattner's cross-examination and direct examination; 4) statements by counsel for the United States during rebuttal argument that referenced facts not in evidence; and 5) failure to give the jury the option of convicting Lattner of possession with the intent to distribute less than 50 grams of cocaine base. This Court finds that the denial of Lattner's motion for new trial was a proper exercise of the district court's discretion because neither individually nor cumulatively do Lattner's accusations warrant a new trial.

It is true that a trial judge should exercise self-restraint and preserve an atmosphere of impartiality and that the appearance of impartiality is as important as the fact of impartiality. *United States v. Whitman,* 209 F.3d 619, 625 (6th Cir.2000). The district court judge indeed upheld this duty, and did not, as Lattner implies, say that Lattner's testimony was untrue. The following statements, of which Lattner complains, were made at the beginning of the redirect examination of the defendant after he admitted under cross-examination to having prior felony convictions:

REDIRECT EXAMINATION BY MR. ROYAL:
Q. How did those convictions come about?
A. Some lies. I just got caught in a Catch-22 and some lies, some police officers.
Q. The- Did you go to trial in one of the cases?
A. No. I-I had a lawyer who - who told me that everything was going to be all right, just take a bench trial and the judge found me guilty then. He said the only way I could go home if I pled guilty to the other one, and of course, I wanted to go home-
THE COURT: I'm not going to have any explanation of this nature here. I take it, um, there were guilty pleas in both cases?
MR. ROYAL: No, that's -
THE COURT: We're not going to attack those guilty pleas.
MR. ROYAL: I understand it, but what I understood him to say there was a bench trial in one case and a guilty plea in the other.
THE COURT: He was trying to say that he got pressured into the guilty plea too, and that very likely is not true. But whether it's true or not, we're not going to have testimony about it here.
MR. ROYAL: All right. Very good. I have no further questions, Your Honor.
THE COURT: Mr. Mueller?
MR. MUELLER: No. Your Honor.
THE COURT: All right. Mr. Lattner, you're excused. Thank you.

J.A. pp. 1202-1203. The defense made no immediate objection or request for an immediate instruction. Furthermore, Lattner's testimony about which the court commented did not concern his guilt or innocence with respect to the crimes charged, but rather concerned only his motive for pleading guilty to one of the prior convictions. This statement by the district court judge did not unfairly prejudice Lattner, and, thus, he is not entitled to a new trial on this basis.

Likewise, Lattner is not entitled to a new trial simply because several jurors briefly observed him in handcuffs while he was being escorted onto an elevator. Such brief juror observation does not create the level of prejudice to the defendant as was contemplated in *Illinois v. Allen,* 397 U.S. 337 (1970) (discussing impact of defendant being shackled during entire trial), and, therefore, this Court has held that jurors' observation of a defendant in handcuffs is not grounds for a new trial. *See United States v. Chipman,* 513 F.2d 1262, 1263 (6th Cir.1975); *United States v. Crane,* 499 F.2d 1385, 1389 (6th Cir.1974). Other circuits have held similarly. *See United States v. Halliburton,* 870 F.2d 557, 562 (9th Cir.1989); *Boswell v. Alabama,* 537 F.2d 100, 104 (5th Cir.1976).

Lattner further argues that the trial court interfered with the presentation of his defense by excessively interrupting his counsel, while the counsel for the United States was rarely interrupted. Lattner provides a string of cites to the transcript of this trial wherein the district court judge allegedly inappropriately interrupted Lattner's counsel. *See* J.A. pp. 281, 286, 293-94, 296-97, 299, 306-309, 313, 321, 363, 365, 367, and 369. Reference to these citations reveals conduct by the district court judge that, contrary to Lattner's assertions, did not undermine the defense but rather directed the course of the litigation in an expeditious manner beneficial to all parties involved. A district court judge has the authority to control the courtroom proceedings, *United States v. Warner,* 971 F.2d 1189, 1197-98 (6th Cir.1992), and both the prosecution and defense were subject to the court's intercession in the conduct of examination of witnesses and the presentation of evidence when warranted.

Neither was Lattner's due process right to a fair trial affected by a statement made by counsel for the United States in rebuttal argument. The counsel stated: "Use your common sense. You're sitting in the City of Detroit. There are hundreds and thousands of guilty drug dealers within eight miles of you right now." J.A. p. 1328. Lattner claims that this statement was "a means by the government to further inflame the jury, to do something about saving the community in which they live through the act of convicting the defendant before them." Lattner, however, takes this statement out of context. The statement, while in poor taste and likely not supported by facts in evidence, was part of a larger direct response to the defense's argument that the police officers involved in the case were motivated to convict the defendant despite his innocence in order to satisfy their war on drugs. For instance, in closing, Lattner's counsel stated "[d]uring your deliberations, please don't ask yourself what is reasonable, what is logical, what makes sense. We have to be fair. That's what the whole court system, the criminal justice system is all about, and when evidence is embellished, exaggerated or changed around by police officers, it makes it very difficult for a jury to reach a fair decision." J.A. p. 1311. The argument clearly was warranted by the summation of the defense, and the district court mitigated any possible prejudice with appropriate instructions to the jury regarding the role of attorney argument in the trial of the case. For example, in *United States v. Young,* 470 U.S. 1 (1985), the Supreme Court held that:

> [i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, . . . the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant.

*Id.* at 11-12. Thus, this argument fails as well.

Next, Lattner's arguments that the trial court erred in failing to give the jury the option of convicting him of possession with the intent to distribute less than 50 grams of cocaine base and further erred in permitting Lattner to be impeached under FRE 609 with two prior narcotics-related convictions also fail. There was no evidence, and none is cited by Lattner, that the amount of crack cocaine was fifty grams or less. Therefore, the court properly ruled that the jury should not be allowed to consider such a verdict. The court also properly allowed impeachment of Lattner's credibility by the introduction of evidence of two prior

felony drug convictions.  FRE 609(a)(1) permits evidence of prior convictions when the court determines that the probative value of admitting the evidence outweighs its prejudicial effect.  *See United States v. Gaitan-Acevedo,* 148 F.3d at 591-92.  The probative value of this evidence is high in the instant matter, where the assessment by the jury of which witnesses to believe was crucial to the outcome of the case.  On the other hand, the prejudicial effect of the evidence was minimal, as the prosecution had already properly introduced, under FRE 404(b), evidence of Lattner's prior involvement in drug transactions.  As the government points out in its brief, "[t]he only new thing brought to the jurors when the impeachment was introduced was the idea that they could use the evidence to assess credibility."

As there has been no single error found, there is no cumulative effect of error rising to the level of prejudice warranting a new trial.

**AFFIRMED.**