**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1603-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RYAN W. WOOLLEY, a/k/a
ANTHONY SACCO, and
RYAN SACCO,

     Defendant-Appellant.

_____

Argued November 5, 2020 – Decided December 9, 2020

Before Judges Ostrer, Accurso, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 16-06-1209.

Stephen J. Marietta, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stephen J. Marietta, on the brief).

Shiraz Deen, Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; Shiraz Deen, on the brief).

PER CURIAM

A jury found defendant guilty of third-degree possession of methamphetamine, a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); doing so with the intent to distribute, a second-degree crime, N.J.S.A. 2C:35-5(a)(1); third-degree possession of another CDS, Alprazolam, N.J.S.A. 2C:35-10(a)(1); and fourth-degree possession of a prohibited weapon, brass knuckles, N.J.S.A. 2C:39-3(e). After merger, the court sentenced defendant to an aggregate eight-year term, with a forty-month period of parole ineligibility.

Challenging his conviction and sentence, defendant raises the following points for our consideration:

> POINT I
>
> EVIDENCE OF TEXT MESSAGES FROM MR. WOOLLEY'S CELL PHONES INDICATING AN UNCHARGED AND UNRELATED ROBBERY AND ATTEMPT TO SELL SUBOXONE SHOULD HAVE BEEN EXCLUDED UNDER RULE 404(B).
>
> POINT II
>
> THE COURT'S LIMITING INSTRUCTION ON THE OTHER-CRIMES EVIDENCE TO THE JURY WAS INSUFFICIENT TO WARD OFF THE EXPLOSIVE EVIDENCE CONTAINED IN THE TEXT MESSAGES SENT FROM MR. WOOLLEY'S CELL PHONES.

POINT III

ANY PROBATIVE VALUE OF DETECTIVE HEALE'S EXPERT TESTIMONY BASED ON HEARSAY WAS SUBSTANTIALLY OUTWEIGHED BY ITS UNDUE PREJUDICE AND SHOULD HAVE BEEN STRICKEN UNDER RULE 403.

POINT IV

THE SENTENCING JUDGE FAILED TO APPROPRIATELY CONSIDER MR. WOOLLEY'S CHILDHOOD TRAUMA AND MENTAL HEALTH DISEASES AS A MITIGATING FACTOR.

We affirm.

A lawful search of defendant's vehicle uncovered drugs and other items often used in the drug trade. Police found over twenty-three grams of crystal methamphetamine in an eyeglass case in a bag with dirty laundry in the trunk; a 2-mg Alprazalom pill in the glove compartment; brass knuckles in a McDonald's bag behind the passenger seat; and, also in the trunk, a digital scale inside a suitcase and small ziplock baggies in a pillowcase with a pillow. Police also recovered prescribed Suboxone, and prescriptions made out to defendant, including one for ninety 1-mg Alprazalom tablets.

Pursuant to a communication data warrant, police discovered drug-related text messages from defendant. In one, evidently referring to Suboxone,

defendant asked, "hey, you know anyone needs sub? I have 55. 400 takes all. I'll bring them to you. It's 150 below cost." In another text, defendant said he "robbed a meth lab, went off the wall for days and dropped out." A police drug expert testified that crystal methamphetamine was usually sold in one-gram quantities, packaged in small ziplock baggies, for $75 to $120 per gram.

Testifying in his own defense, defendant said he possessed the baggies and scale as part of his tobacco and tobacco accessory business. He denied using the items to sell drugs, and denied ever selling drugs. He said he used the brass knuckles as a prop for business photos. Defendant said he tried and thus possessed methamphetamine only once, after he was with two women who broke into a safe that contained the drug. One woman took handfuls of the drug. She gave some to him, and he consumed it, along with the other persons who were present. He denied keeping any of the drug afterwards. Defendant said that a week later, he twice spent the night with one of the women in hotels. The day after the second time, he was arrested outside her home. He testified he did not know that methamphetamine and the 2-mg pill were in his car. He testified that only he and the woman had access to his car during the three days before his arrest.

A-1603-18T4

On cross-examination, the State confronted defendant with his text messages. Defendant claimed that "sub" was a typographical error; he dictated his text messages and he meant the text to say "mugs," which he says was a product he sold in his business. As for the text stating that he robbed a "meth lab," defendant said he sent the message before he committed himself to a hospital for drug treatment. He reiterated that he did not use the baggies to sell drugs and generally denied ever selling drugs.

On appeal, defendant contends the court should have excluded the text messages under N.J.R.E. 404(b).[1] We disagree. We will disturb a trial court's evidentiary ruling to admit other-crimes evidence only for a "clear error of judgment." State v. Green, 236 N.J. 71, 81 (2018) (quoting State v. Rose, 206 N.J. 141, 157-58 (2011)). We discern none here.

No doubt, evidence that defendant proposed to sell Suboxone and that he had robbed a "meth lab" constituted "evidence of other crimes, wrongs, or acts." N.J.R.E. 404(b). Such evidence is "not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." N.J.R.E. 404(b)(1). However, such evidence

---

[1] Defense counsel raised the issue in a motion for a mistrial after the texts were introduced on cross-examination, and addressed again on re-direct.

may be presented to a jury to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." Ibid.

Because such evidence may turn a jury against a defendant, the proponent must satisfy the familiar four-part test outlined in State v. Cofield,

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [127 N.J. 328, 338 (1992) (quoting Abraham P. Ordover, Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989) (footnote omitted)).]

The second prong's "usefulness . . . is limited to cases that replicate the circumstances in Cofield," State v. P.S., 202 N.J. 232, 255 n.4 (2010) (quoting State v. Williams, 190 N.J. 114, 131 (2007)), which "involved proof that the defendant constructively possessed certain drugs, because he possessed similar drugs shortly after the event subject to prosecution," State v. Vargas, 463 N.J.

Super. 598, 613 (App. Div. 2020). Because defendant does not contend prong two applies here, we need not address whether the State satisfied it.

As for the remaining three prongs, we reject defendant's argument that the robbery-related text failed to meet the test. Although the trial court did not expressly review each remaining prong, we may do so exercising de novo review. See State v. Darby, 174 N.J. 509, 518 (2002) (stating that while the decision to admit other crimes or wrongs evidence is ordinarily reviewed for an abuse of discretion, the appellate court will review the order de novo where the trial court failed to apply the applicable test).

The evidence that defendant actually robbed a meth lab was clear and convincing because the text said he did; and the evidence was clear and convincing that defendant sent the text, and that he meant what he said. See Vargas, 463 N.J. Super. at 611 (discussing probative value of statements of a party opponent). The text was relevant, because it tended to prove an important fact in dispute — whether defendant knowingly possessed methamphetamine found in his car. He denied he ever possessed methamphetamine, except one time when he consumed it under peer pressure. A jury could infer that someone who admittedly robbed a "meth lab" and then "went off the wall for days" intentionally possessed the drug. See United States v. Lattner, 385 F.3d 947,

957 (6th Cir. 2004) (stating "claims of innocent presence or association . . . routinely open the door to 404(b) evidence of other drug acts").

And, the probative value of that evidence was not outweighed by its potential for undue prejudice. See Green, 236 N.J. at 83-84 (distinguishing the N.J.R.E. 403 balancing which requires that undue prejudice substantially outweigh probative value). A court must consider whether the proponent had access to less inflammatory evidence to prove its point. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 8(d) on N.J.R.E. 404 (2020). But there was no alternative source of less inflammatory evidence here. The text was a highly incriminating admission by the defendant, tending to show he intentionally possessed methamphetamine, and evidently did so "for days." The fact that he robbed to do so is prejudicial. But, not especially so, since, by his own admission on the witness stand, he committed theft by receiving stolen property, specifically, some of the contents of the safe.

Defendant does not dispute that his text about Suboxone was relevant to a material issue. And we discern no merit in his argument that the text was not clear and convincing evidence of an intent to sell the drug. The offer to sell "sub" was found in a text defendant sent. The State did not need to offer evidence to corroborate that compelling evidence, as defendant suggests. Given

the context in which the word "sub" appears, defendant's contention that "sub" was inserted for "mugs" would be implausible, even by a person whose credibility was not already shaken.

As for the weighing of probative value and prejudice, we recognize that the evidence created the risk that a jury would conclude if he was guilty of selling Suboxone, he was likely guilty of possessing methamphetamine with the intent to distribute it — in other words, once a drug dealer, always a drug dealer. But, the evidence was offered for legitimate purposes that outweighed that potential prejudice.

First, the testimony belied his statement that he was unaware methamphetamine was in his car, and he had no intention to sell it. See Lattner, 385 F.3d at 957.

Second, the text about Suboxone countered defendant's statement that he never sold drugs and he possessed baggies and a scale as part of a legitimate business. The State was entitled to contradict that testimony with the other crimes evidence. Even if the Suboxone text were otherwise inadmissible, "[t]he doctrine of opening the door allows a party to elicit otherwise inadmissible

evidence when the opposing party has made unfair prejudicial use of related evidence." State v. James, 144 N.J. 538, 554 (1996).[2]

A defendant may not take the stand, inject other crimes into the trial by professing he was innocent of them, and then prevent the State from offering evidence — in this case, defendant's own statement — to contradict him. A federal court reached the same conclusion, where "the accused had taken the witness stand and had denied entirely that he had had anything to do with the selling of drugs." United States v. Jacobson, 578 F.2d 863, 866 (10th Cir. 1978). In response, the government was permitted to elicit from the defendant's business partner that he assisted the defendant in a drug transaction that was not charged. Ibid.; cf. Walder v. United States, 347 U.S. 62, 65 (1954) (where "[o]f his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never

---

[2] We note that the State was not the first to elicit defendant's denial of any drug-dealing, in order to force him to "open the door" to other-crimes evidence to contradict him. See 4 Weinstein's Federal Evidence § 607.06 [3][b][iv] (2020) (stating that "[p]rosecutors should not be permitted to escape the restrictions of Rules 404, 608 and 609 by framing questions that, although within the scope of direct examination, have as their objective trapping the defendant into opening the door to impeachment by contradiction"). Defendant professed his non-involvement with drug dealing on direct examination by stating that he never used baggies to sell drugs. He was not charged with using or possessing with the intent to use drug paraphernalia, see N.J.S.A. 2C:36-2, nor was he charged with selling drugs in the past.

dealt in or possessed any narcotics," the government was free to challenge his credibility, albeit with evidence illegally secured).

Defendant also challenges the court's jury instructions. Having carefully reviewed the court's instructions, both mid-trial and in the final instructions, we are satisfied the court adequately informed the jury about how the 404(b) evidence could and could not be used. Defendant's argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

We also are unpersuaded by defendant's argument that the State's drug expert's testimony should have been stricken. The witness discussed the retail value of methamphetamine and other aspects of possession of drugs with the intent to distribute them. After the expert testified on direct, defense counsel moved to strike his testimony because the expert did not clearly present his testimony as opinion, nor explain the bases for it. The court granted the State's request to reopen, and the prosecutor promptly cured the oversight. The court did not abuse its discretion under N.J.R.E. 611, particularly since cross-examination had not begun. Further discussion in not warranted. R. 2:11-3(e)(2).

Finally, we shall not disturb the trial court's sentence. Defendant contends the court erred by inadequately considering defendant's behavioral health and

traumatic episodes of his childhood. In particular, defendant argues the court was obliged, based on that evidence, to find mitigating factor four — "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense." N.J.S.A. 2C:44-1(b)(4).

We are unpersuaded. A trial judge is required to include, as part of his or her sentencing deliberations, mitigating factors supported by credible evidence. State v. Case, 220 N.J. 49, 64 (2014). The trial court expressly acknowledged that, as a small boy, defendant witnessed a traumatic event arising out of his mother's relationship with another man. The judge also recited defendant's multiple diagnoses. Although defendant had received treatment in the past, it appeared to the court he was not under treatment when he committed the offenses in this case. Defendant was managing with pain medicine.

While finding that many of these facts justified finding a risk of reoffending, the court declined to find they excused or justified his crimes. We discern no error. Defendant's behavioral health may explain his personal abuse of CDS. But the court was not compelled to conclude that defendant's behavioral health by itself explains, let alone excuses or justifies, his possession of CDS with the purpose to distribute it to others. Notably, defendant did not contend he sold drugs to support his own substance abuse, nor did he raise his

condition as a defense at trial, as the defendants did in <u>State v. Nayee</u>, 192 N.J. 475 (2007) (mem.) and <u>State v. Nataluk</u>, 316 N.J. Super. 336 (App. Div. 1998).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1603-18T4