NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0449n.06

Case No. 22-5806

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 16, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| MALIK WILLIAMS, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and LARSEN, Circuit Judges.

SUTTON, Chief Judge. After Malik Williams robbed two convenience stores, a jury convicted him of two counts of aiding and abetting Hobbs Act robbery and two counts of aiding and abetting the use of a firearm during a crime of violence. The district court sentenced him to 228 months in prison. Williams raises several challenges to his conviction and sentence. We affirm.

I.

Before dawn on June 28, 2019, Malik Williams and two co-conspirators robbed a Murphy's Express and an Exxon in Memphis, Tennessee. A Murphy's Express store clerk testified that one of the robbers carried a firearm with an extended magazine. At the Exxon, security footage captured two men entering the store with masks and a gun, then walking away with the drawer to a cash register. Afterward, the trio pulled up to the parking lot of the Jennifer Meadows

1

Apartments. The building's security footage shows the men trying to break into the cash register drawer by tossing it around.

That same night, the trio committed a third crime. Darnesha Henderson, a resident of the Jennifer Meadows Apartments, testified that she was sitting in her parked car when two masked men approached her, pointing handguns and demanding money. Henderson recognized that one of the handguns had an extended magazine. The men ordered Henderson out of her car and followed her into her apartment. Henderson sheltered in her children's room and heard shots fired elsewhere in the apartment. Police recovered guns and ammunition from the home invasion, including an extended magazine with Williams's DNA on it.

Federal prosecutors charged Williams with three counts of aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. § 1951, as well as three counts of using a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c). State prosecutors charged Williams for the home invasion under state law.

Williams and the government initially struck a plea bargain, under which Williams agreed to plead guilty to the three Hobbs Act robberies and to incur a 180-month sentence that would run concurrently with any anticipated state court sentence arising from the home invasion charge. The government, for its part, agreed to drop the firearm charges. The district court, however, rejected the plea bargain. Williams proceeded to trial. The jury found Williams not guilty of one robbery but convicted him of the Murphy's Express and Exxon robberies and the related firearms offenses.

The court calculated his Guidelines range to be 92 to 115 months for the two Hobbs Act offenses, and not less than 84 months for each of the two firearms offenses. The court varied down from the Guidelines range of 260 to 283 months, imposing a 228-month sentence.

## II.

On appeal, Williams claims that the district court erred in (1) rejecting his plea bargain; (2) admitting evidence about the home invasion; (3) failing to permit Williams's state counsel to assist him in the federal case; (4) giving erroneous jury instructions; and (5) failing to take Williams's withdrawn guilty plea into account at sentencing.

### A.

*Plea bargain.* Williams claims that the district court erred in rejecting the plea agreement that he and the government agreed to. When a plea agreement says that the prosecution will "move to dismiss" certain charges, Fed. R. Crim. P. 11(c)(1)(A), or that the prosecution "agree[s] that a specific sentence or sentencing range is the appropriate disposition of the case," *id.* 11(c)(1)(C), the district court has discretion to "accept the agreement, reject it, or defer," *id.* 11(c)(3)(A). "Criminal defendants have no right to require district courts to accept their guilty pleas." *United States v. Doggart*, 906 F.3d 506, 509 (6th Cir. 2018). If a district court rejects a plea agreement, it needs only a "sound" reason for doing so. *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022) (quotation omitted). Adequate reasons include an agreement that "does not adequately reflect the seriousness of the offense" or "unduly cabins the judge's sentencing discretion." *Id.* at 594–95. Abuse-of-discretion review applies to the court's decision. *See United States v. Doggart*, 947 F.3d 879, 882 (6th Cir. 2020).

No abuse of discretion occurred. The district court offered two reasons for rejecting the plea bargain. Under the agreement, the court explained, the prosecution agreed to dismiss the three firearms-related charges against Williams, which would "not adequately reflect the seriousness of the actual offense behavior in this case." R.242 at 5. In addition, the court refused to require Williams's sentence to run concurrently with any sentence imposed in the state proceeding about

3

the home invasion, as the home invasion was "really a separate crime" from the convenience store robberies. *Id.* These rationales suffice. In the past, we have upheld similar explanations. *In re United States*, 32 F.4th at 594.

Williams counters that the court had discretion to approve the plea deal. *See Setser v. United States*, 566 U.S. 231, 244–45 (2012). That is true but hardly dispositive. Even if the court could have approved the deal, that did not *require* the court to do so. *Id.* at 242 n.6. The court could fairly, perhaps even wisely, leave the question whether to impose consecutive or concurrent sentences until later when a state court would have "more information." *Id.* at 242.

Williams makes much of the court's comment that it "typically" does not require state decisionmakers to impose concurrent sentences in separate actions. R.243 at 6. He takes this statement to show that the court erroneously concluded that it lacked authority to impose concurrent sentences. Not so. The court saw the home invasion as "a separate crime" from the convenience store robberies, and simply made a case-specific discretionary decision not to constrain the state court's sentencing authority. R.242 at 5. The district court did not say that it could never take the concurrent-or-consecutive decision out of a state court's hands.

Williams worries that the court violated separation-of-powers principles by second-guessing the prosecutor's executive-branch decision to agree to drop the firearms charges. Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, it is true, allows prosecutors to dismiss certain charges as part of a plea deal. But it also leaves the "[a]cceptance or rejection of a plea agreement" within "the prerogative . . . of the district court." *United States v. Yates*, 698 F.2d 828, 829 (6th Cir. 1983) (per curiam). "[A] district court is under no obligation to accept a Rule 11(c)(1)(A) plea deal even if the defendant and the government both agree to it." *See Doggart*, 947 F.3d at 882; *see also United States v. Skidmore*, 998 F.2d 372, 376 (6th Cir. 1993); Fed. R.

Crim. P. 11(c)(3)(A). In doing what Rule 11 allows, the district court did not trespass on the executive branch's authority.

B.

*Home-invasion evidence.* Williams claims that the district court committed reversible error when it permitted testimony about the home invasion by its victim, Darnesha Henderson. Under the Federal Rules of Evidence, a court may admit evidence of an uncharged offense when (1) sufficient evidence exists that the other act took place, (2) the evidence has a valid use other than proving the defendant's character to commit a crime, and (3) its value to the jury is more probative than prejudicial. Fed. R. Evid. 104(b), 403, 404(b); *see United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004). Abuse-of-discretion review applies. *Id.*

Little debate accompanies the first and second requirements. The videos, weapons, and testimony all provided evidence that the home invasion occurred, and they all served a proper purpose. Henderson's testimony linked together various pieces of that evening's puzzle. The video of the men throwing the cash register in the air, the video of them leaving while wearing reflective shoes, and the weapons and extended magazine carrying Williams's DNA—all key pieces of evidence in the underlying case—were recovered from the Jennifer Meadows Apartments, and Henderson's testimony helped explain why the evidence would be there. All of this readily satisfies the first two requirements.

The government satisfied the third requirement, too. The district court, to begin, carefully limited the use of Henderson's testimony to avoid unfair prejudice. It permitted Henderson to testify only that the robbers approached her at night with guns, demanded money, and ordered her to bring them into her apartment, where she went into her children's room and heard shots fired. The court excluded the more inflammatory details of the night: that the robbers used threatening

words and broke Henderson's car window, and that Henderson's boyfriend was shot twice. *See* R.235 at 23, 28, 38. Under these circumstances, the court did not exceed its discretion.

Separate and apart from this challenge, Williams raises other challenges to the court's evidentiary decisions: (1) its failure to make a formal finding about whether the home invasion occurred; (2) its admission of the Jennifer Meadows Apartments videos to show Williams's identity; (3) its decision to allow Sergeant Marcus Kirkwood to testify about how the gun was found; and (4) its failure to stop the prosecutor from briefly alluding to and restating Henderson's testimony during opening and closing statements. Williams waived the first two arguments by conceding that much of the Jennifer Meadows Apartments evidence—including the videos—could come in, and by acknowledging that the videos served the proper purpose of identifying Williams by his reflective shoes. Williams did not raise the remaining challenges below, and plain-error review thus applies to them. That means Williams must show that the district court committed (1) an error that (2) was "plain," (3) raised a "reasonable probability that, but for the error, the outcome of the proceeding would have been different," and (4) "had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (quotations omitted).

Williams does not meet this imposing bar. Not one of the district court's evidentiary decisions, as an initial matter, counts as "plainly" erroneous. But even if Williams could meet this requirement, he cannot show that these admission decisions made a difference. Consider all of the other evidence of guilt that Williams does not challenge: his DNA on the extended magazine, the testimony by the convenience store employees, the Exxon surveillance footage showing a robber wearing Williams's reflective shoes, Williams's social media posts featuring those shoes, the co-conspirators' cell phone records, and the items that police recovered when Williams showed up

barefoot at the hospital. Williams has not shown a "reasonable probability" that any error affected his "substantial rights" by changing the outcome of the case. *Id.* at 2096.

C.

*Right to counsel.* Williams claims that the district court deprived him of the right to counsel by not permitting his state trial counsel to assist him in the federal case. But the "right to counsel" does not require a district court to appoint a defendant's preferred counsel or for that matter use someone that the defendant never asked the court to appoint. *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Williams had the benefit of a public defender at every relevant stage of these proceedings, and he never requested that the district court appoint his state counsel in this case.

D.

*Jury instructions.* Williams objects to the court's jury instructions, some about the beyond-a-reasonable-doubt standard, another about the home invasion evidence. Williams did not object to the jury instructions on these grounds in the district court, so we review for plain error. *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990). A jury instruction that describes the law with "substantial accuracy" offers no basis for starting over. *United States v. Small*, 988 F.3d 241, 253 (6th Cir. 2021). That is just what the district court did in using these model Sixth Circuit jury instructions.

When the district court explained that the "beyond a reasonable doubt" standard did not require the elimination of all "[p]ossible doubts or doubts based purely on speculation," the district court did not need to further define the meaning of the word "speculation." R.197 at 3. In the same way, the court could fairly tell the jury that it could make "reasonable inferences" and explain

that an "inference" meant "look[ing] at one fact and conclud[ing] from it that another fact exists," all without separately defining a "reasonable inference." R.197 at 6.

Likewise, the district court had no obligation to provide a limiting instruction about the proper purposes for which the home invasion evidence could be considered at the time it was admitted, first and last because Williams affirmatively waived the argument below. When the district court asked why William's counsel had not requested a limiting instruction, Williams's counsel responded that he had "decided not to" because "in some ways it puts more emphasis on the other acts of evidence." R.232 at 22–23. The district court could fairly accept this waiver.

E.

*Sentencing.* Williams claims that the district court erred in failing to give him credit for acceptance of responsibility in calculating his advisory Guidelines sentence, mainly because he offered to plead guilty initially. *See* U.S. Sent'g Guidelines Manual § 3E1.1. But Williams did not request that benefit at sentencing, meaning that plain-error review applies. No error, plain or otherwise, occurred. The key problem for Williams is that this adjustment does not apply to a defendant "who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." *Id.* § 3E1.1 cmt. n.2; *see also United States v. Guerrero*, 76 F.4th 519, 531–32 (6th Cir. 2023). That is what Williams did. Even though Williams was at one point willing to plead guilty to some of the charges, he ultimately put the government to its burden of proof at trial. He thus is not eligible for this credit.

We affirm.