**UNITED STATES of America**

v.

**Charles Allen YEAGER, Appellant.**

**No. 09–1022.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 28, 2009.

Opinion Filed: Nov. 5, 2009.

Donovan J. Cocas, Esq., Robert L. Eberhardt, Esq., Office of the United

any listed impairment and that she retained the ability to work.

Appellee's Br. at 43–44 (record citations omitted).

States Attorney, Pittsburgh, PA, for United States of America.

Damon C. Hopkins, Esq., Erie, PA, for Appellant.

BEFORE: SMITH, FISHER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Charles Yeager pled guilty to one count of being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In doing so, he reserved the right to challenge the District Court's denial of his suppression motion on appeal. He asserts that the District Court committed reversible error in its denial of that motion. For the reasons that follow, we will affirm.

### I.

Because we write only for the parties who are familiar with the factual context and procedural history of this case, we set forth only those facts necessary to our analysis.

On April 11, 2007, Agent William Fazio, a parole officer who had been responsible for supervising Yeager since January of that year, received a telephone tip from a female individual who asked to remain anonymous. She informed Fazio that Yeager was the father of her 20–year–old son, and that he had been beating his girlfriend, stealing insulin needles from his sister's children for cocaine use, and was planning a burglary in New York, for which he was attempting to enlist her son as a confederate. At some point in the conversation, the phone was handed to another individual who identified herself as Susie, Yeager's sister. Susie likewise informed Fazio that Yeager had been stealing insulin needles for drugs from her children and had been beating his girlfriend. She also stated that Yeager had a firearm. When asked, Susie gave Fazio a number where she could be reached.[1]

After this conversation, Fazio learned from his supervisor that Yeager had a history of prior burglary convictions and handgun possession. He then called Susie back to ask her about the gun, which she described as small and silver.

Fazio subsequently received permission to search Yeager's property. When he arrived, he observed Yeager and his girlfriend leaving the residence. Fazio described Yeager's appearance as pale and gaunt and also observed that Yeager's girlfriend had a "fat lip," which appeared to have been stitched.

During the encounter between Yeager and the law enforcement agents, Yeager informed the agents that they would find drug paraphernalia in his residence, which they subsequently did. Yeager produced a key chain with a key to a Ford but claimed that the Ford had been sold. However, when a U.S. Marshal on the scene pressed the button on the Ford key, lights flashed on a nearby Ford Explorer. Agents then searched the Ford and located a handgun in its console.

After crediting the testimony of Fazio and his supervisor and after finding the above facts, the District Court denied Yeager's motion to suppress.

### II.

■ The residence or vehicle of a parolee can be searched on the basis of reason-

---

1. Fazio's written report of the telephone call did not contain any information that the callers informed him that Yeager's girlfriend appeared to be beaten or that he had a gun; he testified about these facts for the first time during the suppression hearing. The District Court credited his testimony, and since the defendant has not challenged the District Court's factual findings as clearly erroneous, we accept them as true.

able suspicion alone. *United States v. Baker,* 221 F.3d 438, 444 (3d Cir.2000). Reasonable suspicion is a "particularized and objective basis for suspecting the particular person ... of criminal activity." *United States v. Brown,* 448 F.3d 239, 246 (3d Cir.2006). Yeager insists that the tip, which he describes as anonymous, did not provide the requisite reasonable suspicion. He also insists that any statements that he or his girlfriend made to law enforcement agents must be suppressed as the fruits of an unlawful search and arrest.

This Circuit has previously noted that "[i]n the context of anonymous tips, the Supreme Court has made clear that 'an informant's veracity, reliability, and basis of knowledge ... [are] highly relevant in determining the value of his report.'" *Id.* at 249 (quoting *Alabama v. White,* 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)) (internal quotations omitted). "When considering fully all the facts about a tip, the honesty of the caller, the reliability of his information and the basis of his knowledge are closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is reasonable suspicion." *Id.* (internal quotation omitted).

We agree with the District Court that in this case the tip was not anonymous. As the District Court observed:

> First, the initial caller identified herself by relationship ... [as] the mother of Yeager's son. The other individual identified herself by name as Susie, and also supplied her telephone number, which Agent Fazio subsequently called back. Susie also indicated that she was the defendant's sister.

App. at 10.

In *United States v. Nelson,* 284 F.3d 472, 482 (3d Cir.2002), we held that an informant was "not truly anonymous" because both the police and the caller were aware that the police could potentially identify the caller. We noted that "the informant used a private line whose number was disseminated only to family members and informants, and the caller asked for [an officer] by name," and we held that a search conducted subsequent to the tip was supported by reasonable suspicion. *Id.*

Likewise, in this instance, the caller was reasonably identifiable. In addition to the factors noted by the District Court, we also find relevant the fact that the informant placed a call to Yeager's parole officer, rather than to a general police number. The informant gave specific information describing Yeager's gun, his drug use, his abuse of his girlfriend, and his attempted burglary plans. All of these factors provided Fazio with reasonable suspicion. Furthermore, prior to conducting the search, Fazio confirmed that Yeager had a history of drug use and burglary. He and other agents also determined that Yeager's physical appearance reflected signs of drug use and observed that Yeager's girlfriend bore signs of abuse matching that described in the tip. Based on these factors, the officers had reasonable suspicion to conduct the search. Accordingly, we affirm the District Court's denial of the motion to suppress.

### III.

■ Yeager also asserts that the District Court erred in finding that his prior burglary conviction qualifies as a "violent felony" under 18 U.S.C. § 924(e). The government responds that Yeager waived his right to appeal this issue in his plea agreement, which provides that Yeager "may take a direct appeal from his conviction limited to the following issue: the district court's denial of his Motion to Suppress Evidence." Supp.App. at 3.

We have previously held that "waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice." *United States v. Khattak*, 273 F.3d 557, 558 (3d Cir.2001). The defendant has the burden of showing why the waiver provision of the agreement should not be enforced. *Id.* at 563. Here, Yeager has failed to address the validity of the plea agreement at all. We find no evidence that the plea agreement was not entered into knowingly or voluntarily, and we also find no other exceptional circumstances that would justify disregarding its terms. Accordingly, we will enforce Yeager's waiver of his right to appeal this issue and will not reach the merits of this issue.

## IV.

For these reasons, the judgment of the District Court will be affirmed.