**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0164n.06

No. 08-4468

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 21, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| CHRISTOPHER A. DAVIS, | ) | District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     MARTIN, BOGGS, and COOK, Circuit Judges.

BOGGS, Circuit Judge.   Appellant Christopher Davis was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced to a prison term of 77 months.   Davis appeals his conviction and sentence on three grounds, contending that:  (1) the firearm was discovered during a warrantless search that violated his Fourth Amendment rights; (2) the district court erred in allowing the government to introduce into evidence his statement that he had previously purchased a gun for an ex-girlfriend; and (3) the district court erred in denying his motion for a mistrial after a government witness mentioned "gang activity."   Because the search was proper under the Fourth Amendment and Ohio's parole statute and the district court's evidentiary rulings involved no abuse of discretion, we affirm Davis's conviction and sentence.

I

The events leading to Davis's conviction occurred in January 2007, while Davis was on parole to the Ohio Department of Rehabilitation and Correction. Davis's approved residence for parole purposes was in Akron, Ohio. On January 8, 2007, Sergeant Dittmore of the Canton, Ohio Police Department received information from a known informant that Davis was living in Canton and possibly trafficking in narcotics. The source indicated that Davis was residing at 2000 Spring Avenue in Canton and driving a Chrysler 300. Dittmore conducted surveillance of the residence and saw an individual fitting Davis's description arrive in a Chrysler 300 and enter the home. Driving by the residence periodically over the course of two days, Dittmore noted the car's presence. Dittmore then checked police department records, discovering that Davis was on parole in Akron, that he owned the Spring Avenue residence, and that the Chrysler 300 was registered in his name at a third address. Dittmore spoke with Officer Michael Beebe of the State of Ohio Adult Parole Authority, who learned from parole records that Davis's approved residence was in Akron, not Canton. With approval from his supervisor, Beebe went to Canton to conduct surveillance of the Spring Avenue residence, along with Dittmore and an agent from the Bureau of Alcohol, Tobacco, and Firearms.

During the surveillance, Davis drove up in the Chrysler 300. The officers stopped him and searched the vehicle and the residence. Davis's girlfriend and her three young children were present. After the ATF agent found a gun in a bedroom dresser drawer, Dittmore arrested Davis and took him to the police station, where he was read his *Miranda* rights. Davis provided a written statement,

admitting that he owned the gun found in the house and that he had previously helped an ex-girlfriend purchase a gun, which they had kept in their home for protection until it was stolen.

After a suppression hearing, the district court concluded that, given the conditions of Davis's parole, the search of his Spring Avenue residence did not violate the Fourth Amendment. The court held that the conditions for a warrantless search were met because "Officer Beebe had information to justify a reasonable suspicion that Mr. Davis was living on Spring Avenue in violation of the terms of his parole."

During his May 2008 jury trial, Davis asserted that, contrary to his statement, which he claimed was coerced, he did not own or know about the gun found at the residence. Davis testified that he heard the officers discussing the possibility of charging his girlfriend with child endangerment, and that this motivated him to cooperate with the officers and provide a written statement. Given Davis's defense of lack of knowledge, the district court admitted into evidence Davis's statement that he had previously purchased a gun for a former girlfriend. The statement was admitted over defense counsel's objection that, under Federal Rules of Evidence 404(b) and 403, this was inadmissible evidence relevant only to Davis's "propensity" to commit crimes.

While testifying at trial, Officer Beebe made a brief reference to "gang activity." Beebe was describing the information Davis provided during his interview at the police station:

> Q. And as far as you were aware and what you observed, was there information that was provided by Mr. Davis that wasn't put in this document?
>
> A. I do believe so.
>
> Q. Do you know what that referenced?
>
> A. Gang activity.

The defense moved for a mistrial. Instead, the district court instructed the jury to disregard the remark.

On May 19, 2008, the jury returned a guilty verdict against Davis for being a felon in possession of a firearm. On October 22, 2008, the district court sentenced him to 77 months of imprisonment. Davis timely appealed the conviction and sentence.

II

*Search Pursuant to Conditions of Supervision*

Davis first challenges the warrantless search of his residence as violating his Fourth Amendment rights. As a parolee, Davis signed an agreement regarding the conditions of his supervision, which provided:

> I agree to a search, without a warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. Notice: Pursuant to section 2967.131 of the Revised Code, Officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision.

The agreement echoes Ohio Revised Code § 2967.131(C), which states that "authorized field officers of the authority . . . may search, with or without a warrant," a felon's person, residence, vehicle, or other property if they "have reasonable grounds to believe" that he "is not complying with the terms and conditions" of his parole.

In evaluating a search of a parolee, our inquiry is two-fold. We first "examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth

Amendment's reasonableness requirement." *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003) (citing *United States v. Payne*, 181 F.3d 781, 786–91 (6th Cir. 1999)). This court has already held that § 2967.131(C) "passes constitutional muster." *Id.* at 521. As we explained in *Loney*, "it is now beyond question that a state statute survives Fourth Amendment scrutiny if it authorizes searches of parolees based on a reasonable suspicion that an individual is violating the terms or conditions of parole," *id.* at 520–21, and "Ohio's 'reasonable grounds' standard mirrors . . . the federal reasonable suspicion standard," *id.* at 521. Indeed, the Supreme Court has upheld California's more intrusive parole regulations, which require parolees to agree to be subject to search "with or without a search warrant and with or without cause." *Samson v. California*, 547 U.S. 843, 846 (2006).

As the statute itself is reasonable, the second question is whether "the facts of the search itself satisfy the regulation or statute at issue." *Loney*, 331 F.3d at 520. In other words, we ask whether the officers had reasonable grounds—or reasonable suspicion—to suspect that Davis was violating the terms and conditions of his parole. Reasonable suspicion "is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person.'" *Payne*, 181 F.3d at 788 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "Courts analyzing searches under the reasonable suspicion standard use the same factors but require a less demanding showing than when applying a probable cause standard." *Id*. at 790.

In this case, the reasonable suspicion standard was satisfied. Officer Dittmore received information that Davis was residing at the Spring Avenue address in Canton. He then corroborated

that information by conducting surveillance of the address, where he observed on multiple occasions a car registered to Davis and an individual fitting Davis's description. Officer Beebe confirmed through a check of parole records that Davis's approved residence was in Akron. These facts sufficed to establish reasonable grounds to suspect that Davis was not complying with the conditions of his parole. Officer Beebe was therefore justified in conducting a warrantless search of Davis's residence pursuant to § 2967.131(C).

Davis argues that reasonable grounds could not be established because his assigned parole officer was not contacted by the police—the investigation was instead conducted by a different parole officer, Officer Beebe. But there is no requirement in § 2967.131(C) that "authorized field officers of the authority" must be those specifically assigned to an individual parolee, and Beebe had approval from his supervisor to investigate Davis. We further note that the Supreme Court has upheld a search of a probationer's property based on reasonable grounds even though the police failed "to secure the assistance of [the probationer's] own probation officer" and were accompanied by a different probation officer. *Griffin v. Wisconsin*, 483 U.S. 868, 871 (1987).

*Testimony about Davis's Prior Gun Purchase*

Despite objections from Davis's counsel, the district court allowed the government to introduce at trial the portion of Davis's written statement admitting that he had previously purchased a firearm for an ex-girlfriend and had kept that gun in their home. The admission or exclusion of evidence in a criminal case is reviewed for abuse of discretion. *United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006). A trial court's evidentiary ruling will stand unless there is a definite and firm

conviction that the court committed a clear error in judgment. *United States v. Bell,* 516 F.3d 432, 440 (6th Cir. 2008).

The statement was admitted under Federal Rule of Evidence 404(b), which provides that evidence of other crimes is not admissible to prove the character of a person, but may be admissible for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." If admissible under 404(b), the evidence is also subject to Federal Rule of Evidence 403, which provides that relevant information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. We have articulated a three-step process to determine if Rule 404(b) evidence is admissible, inquiring: (1) whether there is sufficient evidence that the "other acts" took place; (2) whether the "other acts" are admissible for a proper purpose under Rule 404(b); and (3) whether the evidence is less prejudicial than it is probative. *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004).

In this case, Davis's written statement provides sufficient evidence that he purchased a gun for his ex-girlfriend. As to the relevance of this evidence under Rule 404(b), the district court admitted it after Davis's defense counsel argued that Davis's statement that he owned the gun found at the Spring Avenue home was coerced and that Davis had no knowledge of the gun. The district court ruled that evidence that Davis had possessed a gun before had "substantial probative value" and provided a limiting instruction that the jury was to consider the evidence only in determining "whether he intended to possess the gun, or had a motive to possess it, or opportunity to possess it."

The district court properly concluded that the evidence was relevant to establishing Davis's knowledge, motive, and intent concerning the firearm in light of his defense that he was unaware the

gun was in the residence. We agree with the District of Columbia Circuit that in cases involving firearm possession by a felon, evidence that the defendant possessed a gun at other times "is often quite relevant to his knowledge and intent with regard to the crime charged." *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (internal quotation marks and citation omitted). Nor was the probative value of the statement substantially outweighed by the danger of unfair prejudice under Rule 403, particularly given that the court cautioned the jury as to the relevance of the evidence. Thus, the district court did not abuse its discretion in admitting the statement.

### *Denial of a Mistrial*

Finally, Davis argues that Officer Beebe's reference to gang activity was highly prejudicial and warranted a mistrial. The district court instead struck the answer and provided a curative instruction. We review the district court's denial of a mistrial for abuse of discretion. *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990).

The district court did not abuse its discretion in denying Davis's motion for a mistrial. A mistrial is warranted when there is a seriously prejudicial error. *Ibid*. The testimony in question was not highly prejudicial. Officer Beebe simply stated that he and Davis had discussed "gang activity." He did not state that Davis himself was involved in a gang. The district court's curative instruction was sufficient to remedy any prejudice.

### III

For the reasons stated, we AFFIRM Davis's conviction and sentence.