NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0499n.06

**FILED**
Aug 24, 2016
DEBORAH S. HUNT, Clerk

No. 15-2260

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| KEVELIN NOEL | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    CLAY, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.  In November 2013, Kevelin Noel's parole supervisor received a tip from an unnamed caller that Noel had a firearm in his house.  An ensuing search revealed a handgun hidden in the ceiling tiles of Noel's residence.  Noel pled guilty in federal court to being a felon in possession of a firearm, reserving the right to appeal the denial of his motion to suppress.  As Noel sees things, the search was illegal and the handgun should have therefore been suppressed as tainted fruit.  Because the search was supported by reasonable suspicion, however, it comported with the Fourth Amendment.  Noel's motion to suppress was therefore properly denied.

Noel was paroled in 2012, following twelve years' incarceration on a state sexual-assault conviction.  While on parole, Noel lived with his uncle in a house on Snowden Street in Detroit.  Noel's parole conditions prohibited him from, among other things, possessing firearms and

controlled substances. As a parolee, Noel was also subject to a state administrative rule that authorizes parole agents with the Michigan Department of Corrections (MDOC) to search a parolee's person or property if "there is reasonable cause to believe that a violation of parole exists." Mich. Admin. Code R. 791.7735(2). During the course of 2013, Noel tested positive for marijuana on four occasions, in January, March, September, and November. Agent Mitchell, Noel's parole supervisor, testified at an evidentiary hearing that each marijuana violation provided a basis for parole agents to search Noel's residence. *Id.* None of the violations led to an immediate search, however, and Noel remained on parole.

This appeal concerns a search of Noel's residence on November 13, 2013, one week after Noel's most recent positive marijuana test. On either November 12 or November 13, Mitchell received a call concerning Noel from a parole agent in another office. According to the other agent, an unnamed caller had informed the agent that "Noel was in possession of a weapon in his home." On the afternoon of November 13, Mitchell received a direct call from "the caller," presumably the same one that had contacted the other agent. In that conversation, the caller repeated that he was "aware that Mr. Noel had a weapon in the home," and added "that [Noel] had been assaultive towards his uncle who resided in the home." Although the caller did not provide a name, Mitchell did learn the location of the caller and his relationship to Noel. The caller also disclosed that "he knew [Noel] and he knew [Noel's] uncle, and he knew that [Noel] had threatened the uncle and other family members." Before Mitchell received that call, she knew that Noel was living with his uncle.

Armed with the tip, Mitchell contacted Agent Rummel, an MDOC parole agent assigned to an ATF task force charged with conducting home checks for parolees. After Mitchell gave Noel's address to Rummel, Mitchell called Noel, asking him to return to his residence. Rummel

went to the house with Detroit police officer Malone, who was also attached to the task force. According to Malone's testimony, Noel was entering the house through the front door when the officers arrived, and Rummel walked up to the door. A brief conversation between Rummel and Noel culminated in "Agent Rummel enter[ing] the dwelling." Malone followed. During Rummel's search of the house, he found hidden in the basement's ceiling tiles a Ruger .22 caliber handgun with an obliterated serial number. Noel was arrested and taken to the parole office, where he confessed to having possessed the gun for three months. A federal indictment followed about four months later.

In the district court, Noel filed a motion to suppress the gun and his confession, arguing that the search was illegal. The search was not supported by reasonable suspicion, Noel asserted, because the tip from the unnamed caller was "anonymous" and because MDOC agents did not corroborate the tip. Noel also contested the sufficiency of the evidence of consent.[1] Both issues were addressed at the evidentiary hearing that the district court held in September 2014, a hearing that involved testimony from only two witnesses. First, Malone testified to the circumstances surrounding the search, including his observation of Rummel talking with Noel on the front porch of Noel's house. Second, Noel's parole supervisor, Mitchell, testified about the November 13 tip, Noel's parole conditions, and his parole history. On cross-examination, Mitchell also admitted that the parole-compliance search was based entirely on the unnamed tipster's calls, not Noel's positive drug tests. Neither Rummel nor Noel testified.

According to the district court, Noel's motion faltered on two grounds. In the first place, the district court held that the tipster's call, combined with Noel's four marijuana violations, provided reasonable suspicion for the search. The district court also held that Noel consented to

---

[1] In the district court, Noel also challenged the voluntariness of his confession at the parole office. Because he does not press that argument on appeal, the argument is abandoned.

the search, mistakenly asserting that *Rummel* had testified at the evidentiary hearing as to Noel's consent. That ruling eventually led to a Rule 11 guilty plea in March 2015, in which Noel reserved the right to appeal the denial of the motion to suppress. This appeal followed.

The unnamed tipster's telephone call to Mitchell on November 13 exhibited sufficient indicia of reliability to justify a search. Because Mitchell was able to identify the caller, he was not completely anonymous, and so he could be held accountable for any false allegations. As the tip alone is sufficient to establish reasonable cause, we need not decide whether Mitchell's testimony concerning the basis for the search—the caller's tip—precludes us from also taking into account Noel's four marijuana violations. Nor do we address whether the district court clearly erred by holding that the search was supported in the alternative by consent.

As an initial matter, Rummel and Malone needed only reasonable suspicion and not probable cause to search Noel's residence for a firearm. In Michigan, parolee searches are governed by Michigan Administrative Code Rule 791.7735(2), which allows for searches of "a parolee's person or property" if "there is reasonable cause to believe that a violation of parole exists." Because the Fourth Amendment's warrant and probable-cause requirements do not apply to parolees to the same extent as other citizens, *see United States v. Smith*, 526 F.3d 306, 308–09 (6th Cir. 2008), a regulation allowing for parolee searches based on reasonable cause generally satisfies that Amendment, *see United States v. Loney*, 331 F.3d 516, 520–21 (6th Cir. 2003). The sole question in this case is whether the state complied with Rule 791.7735(2) in conducting a so-called special-needs search pursuant to that rule. *Cf. Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987).

The reasonable-cause requirement was met here, because the November 13 telephone call to Mitchell provided an objective basis for suspecting that Noel possessed a firearm. The parties

agree that "reasonable cause" in Rule 791.7735(2) is identical to the "reasonable suspicion" standard discussed in *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. Appellant Noel Br. 17; Appellee Gov't Br. 15. Reasonable suspicion—a totality-of-the-circumstances inquiry—requires investigating officers to have "'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *United States v. Lee*, 793 F.3d 680, 686 (6th Cir. 2015) (quoting *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999)). A caller's tip concerning criminal activity may provide such a basis if the tip bears sufficient indicia of reliability. *See United States v. Atchley*, 474 F.3d 840, 848 (6th Cir. 2007) (citing *Florida v. J.L.*, 529 U.S. 266, 270–72 (2000)). In this case, although the caller did not give his name to Mitchell, the tip was reliable. Most significantly, Mitchell testified that she was able to "identify" the caller based on information provided in the call about the caller's "location" and his "relationship" to Noel. That Mitchell knew the caller's location suggests that she knew where the caller lived, or at least where the caller could be found. Mitchell would have also been justified in suspecting that the caller frequented the Snowden Street address, as some of the information in the call—that "Noel had a weapon in the home" and that he lived with his uncle—related to activity within the house. As for the caller's relationship to Noel, Mitchell's knowledge of that information strongly supports the notion that the caller was readily identifiable. Although Mitchell's testimony does not disclose what type of relationship the caller had with Noel, Mitchell's use of the word "relationship" suggests that the connection between the caller and Noel was a close one. A parole agent would probably not testify that a caller's relationship to a parolee allowed the agent to ascertain the caller's "identity" if the parolee knew the caller only as an acquaintance. Moreover, the caller told Mitchell that Noel lived with his uncle, that Noel had threatened or assaulted the uncle, and that the caller personally knew both

Noel and his uncle. That information, in addition to the caller's relationship and location, would have allowed Mitchell to narrow down the class of potential callers.

The fact that the caller was ascertainable makes a world of difference. The chief reason for disfavoring anonymous tips is that unidentified callers can fib with impunity. *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118 (9th Cir. 2003) (citing *J.L.*, 529 U.S. at 270). That was the Court's concern in *J.L.*, where the anonymous tipster—who told police that the defendant was toting a gun at a bus stop—could have been any citizen in Miami-Dade County. 529 U.S. at 268, 271. The complete anonymity of the caller in *J.L.* puts distance between that case and this one. "[A] tip might be anonymous in some sense yet have certain other features, either supporting reliability or narrowing the likely class of informants, so that the tip does provide the lawful basis for some police action." *Id.* at 275 (Kennedy, J., concurring). Mitchell's knowledge about the caller's identity—location and relationship to Noel— significantly increased the chance that the caller could be tracked down and held accountable for false accusations. This risk therefore increased the caller's reliability.

Other aspects of the tip also support the conclusion that reasonable suspicion existed. In the first place, the caller's awareness that Noel lived with his uncle and the caller's report of Noel's threats suggested that the caller had a basis for knowing that Noel had a gun. This was not a case where a caller provided barebones information about only the alleged criminal activity that ultimately resulted in police action. Moreover, the tipster called a parole agent directly, and so he likely knew that Noel was on parole. This supports reasonable suspicion as well. *See United States v. Yeager*, 351 F. App'x 718, 720 (3d Cir. 2009). Also reinforcing reasonable suspicion is the fact that the tipster called twice in the span of one or two days, talking to two different parole agents. Because a caller concocting a story would probably be wary about

risking identification by calling twice, the fact that this tipster did so increases the likelihood that he was reporting a legitimate tip.

All told, Mitchell gleaned the following information from the call: (1) the caller knew Noel and his uncle; (2) the caller knew that Noel lived with his uncle; (3) the caller knew that Noel was a parolee; (4) the caller believed that Noel had threatened his uncle; and (5) the caller believed that Noel was in possession of a handgun. In addition, Mitchell learned (6) the caller's location and (7) the caller's relationship to Noel. Finally, Mitchell knew that (8) the caller had already called a parole office once before, and had reported the same information. On appeal of a motion-to-suppress denial, the evidence must be viewed "in a light most favorable to the Government." *Loney*, 331 F.3d at 520 (quoting *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)). In this case, the state officers acted on a fresh tip that bore moderate indicia of reliability. Under these circumstances, Mitchell reasonably suspected that Noel was in possession of a handgun.

To be sure, the tip could have contained more details. For instance, the caller could have told Mitchell where the gun was hidden in the house, and he could have described the make and model of the gun. However, reasonable suspicion does not require a microscopic level of detail, but "only a moderate chance of finding evidence of wrongdoing." *United States v. Hilton*, 625 F. App'x 754, 758 (6th Cir. 2015) (citation and internal quotation marks omitted). That chance was present here.

The judgment of the district court is affirmed.