NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0019n.06

Case No. 24-5347

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) ) | Jan 16, 2025 KELLY L. STEPHENS, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| ARISTOTLE WHITE, | ) ) | EASTERN DISTRICT OF KENTUCKY |
| Defendant - Appellant. | ) ) | OPINION |

Before: THAPAR, NALBANDIAN, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** A jury convicted Aristotle White of possessing methamphetamine with intent to distribute and possessing a firearm in furtherance of that drug crime. White appeals his conviction and sentence. We affirm.

## I. Background

On May 11, 2022, a law enforcement officer saw a car owned by Aaron Tyler Welch parked at a gas station in Kentucky. The officer knew that Welch was a drug trafficker. But Welch was not there; instead, Aristotle White was driving the car. Officers followed White and eventually pulled him over for speeding. There was an active warrant for White's arrest. After arresting White, the officers searched the car and found a handgun between the driver's seat and the center console, $2,569 in cash in the center console, an AR-15 rifle in the trunk, and a backpack containing 289 grams of methamphetamine in small bags behind the driver's seat.

The government charged White with possessing at least 50 grams of methamphetamine with intent to distribute and possessing a firearm in furtherance of a drug trafficking offense.

At trial, White's defense was that he bought the car from Welch and did not know about the AR-15 or the backpack containing methamphetamine. The government called several witnesses, including Welch, Welch's girlfriend Samantha Daniels, and Davon Blackford, a local drug dealer.

Welch, Daniels, and Blackford all testified about White's past drug dealing and firearm possession. Welch testified that he sold his car to White for $2,000 and two ounces of methamphetamine. Welch and Daniels also said that they bought methamphetamine and Xanax from White the night before his arrest. According to Welch, White was carrying "a handgun and an AR" that night. RE 77, Trial Tr., Page ID 483.

Blackford said he sold "ounces" and "pounds" of methamphetamine to White "practically every day" in the month before White was arrested. RE 78, Trial Tr., Page ID 526-27. White resold the methamphetamine. Sometimes, the two men would sell methamphetamine together. During their interactions, Blackford saw White carry a gun "[s]o he wouldn't get robbed." *Id.* at 527.

White did not object to any of the above testimony. The district court instructed the jurors that they could only consider the three witnesses' testimony "as it relates to . . . the defendant's intent and knowledge," and "not . . . for any other purpose." RE 61, Jury Instrs., Page ID 154.

The jury found White guilty on both counts. After trial but before sentencing, White helped smuggle contraband into the detention center where he was in custody. As a result, several inmates were hospitalized.

At White's sentencing, the district court calculated the guidelines range as 121 to 151 months imprisonment for the possession offense, plus a consecutive 60 months for the firearm offense. Citing the smuggling incident, the district court declined to impose a sentence below White's guidelines range. But noting mitigating factors like White's age and work history, the

district court sentenced him to 181 months in prison—the guidelines minimum. As a condition of White's supervised release, the district court gave the probation office the authority to search White's "person, house, residence, office, vehicle, papers, computers," and other electronic devices. RE 83, J., Page ID 740. To invoke this authority, a probation officer would need "reasonable suspicion" that White violated a condition of his supervised release and the property searched would "contain evidence of the suspected violation(s)." *Id*. White objected to his sentence and the supervised release condition.

## II. Analysis

White appeals the district court's admission of testimony about his prior drug sales and firearm possession. He also challenges his sentence as substantively unreasonable and attacks the supervised release search condition.

### A. Evidentiary Challenge

White argues that the district court violated Federal Rule of Evidence 404(b) when it admitted the testimony of Welch, Daniels, and Blackford. Rule 404(b) bars the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character" and show that "the person acted in accordance with [that] character." Fed. R. Evid. 404(b)(1). Such evidence is admissible for other reasons, like "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. at 404(b)(2).

We review the admission of Rule 404(b) evidence for plain error when the challenging party did not object at trial. Fed. R. Crim. P. 52(b); *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). A plain error is (1) "an error" that is (2) "plain" and (3) "affects 'substantial rights.'" *Greer v. United States*, 593 U.S. 503, 507 (2021) (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018)). An error affects a party's substantial rights when there is a reasonable

probability that it changed the outcome of the case. *Id*. at 507-08. Relief is appropriate only when "the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 508 (quoting *Rosales-Mireles*, 585 U.S. at 135).

### 1. Evidence of prior methamphetamine distribution

Welch, Daniels, and Blackford all testified that White dealt methamphetamine in the month before his arrest. Their testimony was admissible to show that White intended to distribute the methamphetamine found in his car.

We have held that "when a defendant is charged with a specific intent crime, such as possession with intent to distribute, 404(b) evidence is admissible to prove intent" so long as the evidence is more probative than prejudicial. *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004). Evidence of past drug dealing is probative of intent to distribute when it is "substantially similar" and "reasonably near in time to the specific intent offense at issue." *United States v. Cordero*, 973 F.3d 603, 621 (6th Cir. 2020) (quoting *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011)).

White's past distributions were substantially similar to the drug crime charged in this case. Welch, Daniels, and Blackford all testified that White sold drugs in ounce quantities. Moreover, the backpack found in the backseat of White's car contained bags of methamphetamine all weighing about one ounce.

White's past drug deals were also close in time to his arrest. In fact, Welch and Daniels bought drugs from White the night before, and Blackford saw White sell methamphetamine a month earlier. *See United States v. Emmons*, 8 F.4th 454, 476 (6th Cir. 2021) (holding that uncharged conduct occurring three years prior was "reasonably near in time to the charged conduct"). Thus, the testimony was probative of intent because it suggested a "larger scheme" to

distribute methamphetamine. *Id*. at 475. The testimony was also not more prejudicial than it was probative because the district court's "strong cautionary instruction" adequately mitigated any prejudicial effect. *Lattner*, 385 F.3d. at 958.

For these reasons, the district court did not err in admitting the witnesses' testimony under Rule 404(b)(2). And even if the district court erred, White cannot show a reasonable probability that the admission of the evidence changed the outcome of the case. Because "[i]ntent to distribute may be inferred from a large quantity of drugs," the government likely would have proved White's intent without the witnesses' testimony. *United States v. Hall*, 20 F.4th 1085, 1107 (6th Cir. 2022).

### 2. Evidence of prior firearm possession

White also challenges the admission of evidence of his prior firearm possession. Welch testified that White had an "AR" the night before he was arrested. RE 77, Trial Tr., Page ID 483. Blackford said that he saw White carry a firearm "a couple times" when the two dealt methamphetamine together. RE 78, Trial Tr., Page ID 527. The district court properly admitted this testimony because it suggested that White knew about the AR-15 found in the trunk of his car.

Evidence of knowledge is admissible under Rule 404(b)(2) "when the defendant claims he was unaware that he was committing a criminal act." *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994). As with intent, evidence showing knowledge must be more probative than prejudicial. *Id.* at 1193.

This case is similar to *United States v. Davis*, 415 F. App'x 709 (6th Cir. 2011). There, the defendant was charged with being a felon in possession of a firearm after his parole officer discovered a gun in the defendant's dresser. *Id.* at 710. At trial, the defendant claimed that he did not know about the gun. *Id.* at 710-11. To combat this defense, the government introduced evidence that the defendant had previously bought a gun for a girlfriend. *Id.* at 711. We agreed

with the district court that the evidence of prior gun possession "had substantial probative value." *Id.* at 713 (internal quotation marks omitted).

The same is true here. The evidence that White possessed a firearm during prior drug deals and an AR-style rifle the night before he was arrested was probative of his knowledge that there was an AR-15 in his trunk. White cannot show any error, much less plain error, in the admission of this testimony.

### B. Sentencing Challenge

White next argues that his sentence is substantively unreasonable. A defendant's substantive reasonableness claim asserts that the district court unreasonably weighed the sentencing factors in 18 U.S.C. § 3553(a), resulting in a sentence that is too long. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). We review for abuse of discretion and presume that a sentence within the guidelines range is reasonable. *United States v. Jones*, 81 F.4th 591, 602 (6th Cir. 2023).

White argues that the district court over-emphasized his post-conviction conduct during sentencing. The record demonstrates otherwise. Before sentencing White, the district court described the seriousness of the offense and White's criminal history. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). The court considered White's risk to the public and the sentence's effect on deterrence and rehabilitation. *See id.* § 3553(a)(2)(B)-(D). The court also reviewed the guidelines range, the need for consistency, and the need for restitution. *See id.* § 3553(a)(3)-(4), (a)(6). And the court looked at mitigating factors, *see id.* § 3553(b)(1), noting that White had a work history, supported his family, and struggled with addiction and mental health issues. Finally, the district court opined that White's decision to smuggle contraband into jail was "a discouraging sign." RE 93, Sentencing Tr., Page ID 940.

All of this was within the court's discretion. True, the court cited White's post-conviction conduct to explain its refusal to vary below the guidelines range. But the court also relied on the mitigators in giving White the lowest possible within-guidelines sentence. White's claim is ultimately that "the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). That argument is beyond our abuse-of-discretion review. *Id.*

### C. Search Condition Challenge

Finally, White appeals the supervised release condition allowing searches of his person, property, and electronic devices. We review the imposition of a special condition of supervised release for abuse of discretion, considering both procedural and substantive dimensions. *United States v. Barcus*, 892 F.3d 228, 235 (6th Cir. 2018).

White attacks the search condition as too broad. He also contends that the condition is unrelated to his underlying offense because the charges originated from a traffic stop and did not involve evidence of electronic communication.

A special condition of supervised release must meet three requirements. 18 U.S.C. § 3583(d)(1)-(3). First, the condition must "reasonably relate[]" to certain sentencing factors described in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d)(1). Those factors are "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence" to "deter[] . . . criminal conduct," "protect the public," and "provide the defendant with . . . correctional treatment in the most effective manner." *Id.* § 3553(a)(1), (2)(B)-(D). Second, the condition must not restrict liberty more than is "reasonably necessary" to accomplish the goals of deterrence, public safety, and correctional treatment for the defendant. *Id.* § 3583(d)(2). And third, the condition must be "consistent with any pertinent policy statements

issued by the Sentencing Commission," *id.* § 3583(d)(3). White's challenge focuses on the first two of these requirements.

The district court did not abuse its discretion because the special condition satisfied § 3583(d). To begin, the search condition reasonably relates to the pertinent sentencing factors. As the district court explained at sentencing, White's crime was "serious" and bore "insignia of violence," RE 93, Sentencing Tr., Page ID 928-29, which supports more restrictive supervision. The court also noted White's status as a repeat offender, indicating his difficulty "[l]iving within the law." *Id.* at 929. The search condition properly aims to curb White's risk of recidivism through probation office monitoring. The district court further observed that drug dealing causes public harm. *Id.* at 893, 936. By ensuring that White does not reoffend, the search condition protects the public from the effects of methamphetamine distribution. Finally, the search condition promotes rehabilitation because it is tailored to prevent further involvement with narcotics.

Additionally, the search condition does not restrict White's liberty more than is reasonably necessary to accomplish the goals set out in § 3583(d)(2). The condition only allows a Probation Officer to search White's person, property, or electronic devices upon reasonable suspicion that White violated a condition of his release. RE 83, J., Page ID 740. The district court noted that one reason for allowing searches of White's property or electronics was White's "post-verdict conduct, which includes arranging for contraband to be fervently introduced into the jail." RE 93, Sentencing Tr., Page ID 951. It was not unreasonable, especially considering this conduct and White's criminal history, for the district court to be concerned about White's use of electronics or other materials to conduct illegal activities.

Indeed, we have upheld similar search conditions for federal probationers whose "high risk of reoffending . . . warrants close supervision," noting that "supervised-release conditions do not

have to be directly related to the defendant's conviction and can instead be implemented in response to a defendant's history and characteristics that indicate a risk of dangerousness to the public safety." *See United States v. Gholston*, No. 24-5059, 2024 WL 4977139, at \*4 (6th Cir. Dec. 4, 2024) (citing *United States v. Kingsley*, 241 F.3d 828, 837-38 (6th Cir. 2001)). And in the Fourth Amendment context, we have upheld as reasonable searches based on reasonable suspicion that a probationer is violating the conditions of his release. *United States v. Henry*, 429 F.3d 603, 609 (6th Cir. 2005) (analyzing Kentucky's probationary search policy in the context of a motion to suppress). In light of this case law, White's history and characteristics, and the limitations embedded in the special condition, the district court did not abuse its discretion in imposing the condition.

We affirm.